May it please the court. Counsel, my name is Marshall Tanik. I represent the appellant Thomas Nagel who is in courtroom here with his wife Kelly this after this morning. Mr. Nagel was a veteran 27 years of the Jamestown Police Department. He had an unblemished record there, was well regarded. He was terminated from his employment in March of 2016. That termination occurred after he was interviewed on a television station KVLY out of Fargo concerning a whistleblower report. He did not make the whistle report whistleblower report. He doesn't know who was involved in the whistleblower report. The reason that he ended up being interviewed is because the TV report and the the whistleblower report concerned an alleged misuse of county of a county jet ski. Didn't even involve the Jamestown Police Department. Is the point about him not making the report in the case why I say that is because I know there's no proof that he made the report but I don't know that there's any proof that he didn't make the anonymous report. He denied it. He denied making the report. But that's the only that would be the outcome. I thought he said the opposing counsel brief says I can say it was somebody that would be in fear of losing their job. He was asked by the television reporter who do you think would make a report like this and he speculated well I suppose it would be someone who might be in fear of losing his job. I can say did I quote it right or wrong? He can he said I can say that that's what he said. Well that means he knew. No the record is that he didn't know. Well there is no creates a strong inference. Well it doesn't. It's clearly not proven but to say to say categorically that the record establishes that he didn't make the report I think is exaggerating the record. He denied it. There's been no one has which is admissible in the North Dakota law. So there's no and no a contention has been made that he made the report himself at all. Now there's also a Facebook post though too like didn't it appear on his alter ego Facebook account or right and so doesn't that create a problem in terms of potentially inferring that he made the report. I don't want to belabor this point because I don't know that it's important to the outcome. I just want to be sure about the record. Well at a minimum your honor what that reflects is that there's a fact dispute as to whether he knew who made the report or not and that of course and this is comes to the court on summary judgment so of course all factual inferences must be taken in favor it must be construed or drawn in favor of Mr. Nagle the appellant. But at any rate we believe the record reflects that he didn't know who did the report made the report and he didn't do it himself. But there are two primary issues before the court this morning. One is the First Amendment issue as to whether he was terminated for exercising a First whether he was deprived of due process of law because he was not given notice and an opportunity to respond to the charges that were leveled against him prior to his termination. Now the briefs were all filed before our recent enbanked decision in in in the Morgan. Right. Oh you would you please distinguish Morgan for me. Well in this case your honor there is no the charges that ultimately led to the two that underlie the termination of Mr. Nagle started with a search for this whistleblower. That's what they were searching for and that's what they were investigating. He was subject he was he had an investigative interview and he and during that interview he asked what are the charges against me? What am I being accused of? What am I supposed to respond to? And they said well there are no particular violations. On another charge with violating our rules and regulations. Well police department has a 20-page rule book with 150 violations. He was never told at all what he was suspected or accused of violating. Now what I'm hearing is part of your due process argument. I would think my Morgan question addressed the First Amendment. Well yeah and the First Amendment issue your honor here. Answer that first. Sure I will. The the essentially the four-part standard for the First Amendment. One is whether the right was clearly. The question was distinguish Morgan. Why does it not why does it not almost control adversely your First Amendment claim? Well because in this case your honor there was a clearly established right here to speak out as Mr. Nagle did or at least to be interviewed on the television station. He the clearly established right was recognized by Chief Ettinger himself. The chief said he got a hundred and fifty complaints about what Mr. what Mr. Nagle said on the television station and the there was no verification of that no confirmation of that but the chief said I told the people who are complaining that I can't do anything about this because it's a quote free speech issue. So the chief himself recognized that there was a clearly established right for Mr. Nagle to be interviewed on the television station. So he turned around later and supported the termination of Mr. Nagle nonetheless he was aware that there was a clearly established First Amendment claim. He said so himself. Secondly in this case Mr. Nagle was there there clearly was a public concern here. Chief Ettinger said yes there is a public concern about the alleged misuse of county property. The the officer who conducted was called the police review board officer Blinsky who was delegated to conduct the review board that led to the termination of Mr. Nagle also said yes that's a very important issue it's a matter of public concern and lastly the city administrator Mr. Fuchs who gave Mr. Nagle the termination letter along with the mayor he said that's a this was a matter of public concern. The question of whether there was a misuse of county property so what about what about the antecedent question I know you're you're covering qualified immunity in response to Judge Loken's question but the antecedent question here is whether the speech was protected at all did it arise out of his position as a you have him show up yes the police station wasn't in the background handcuffs gun on him badge off and you have them referring to him as the president of the Fraternal Order of Police and you have have them mentioning that he's a police officer why doesn't that at least under what is a Garcetti make it unprotected? Well in Garcetti the the author the claimant in Garcetti's job duties were concerned the processing of the legal proceedings that he the paperwork that he went out and then said was part of that he thought was illegal that was part of his job duties. Mr. Nagle's job duties were not to be a spokesman for the police department. Wait we've we've applied Garcetti in situations was a what or it wasn't clearly part of the job description. Well but well it's been applied in different ways but the Garcetti case hold that stands for the proposition that First Amendment protection doesn't apply doesn't apply if it's part of the job duties in this case the chief of police directed the reporter to go to talk to Nagle. This isn't the kind of case in the many of the typical whistleblower cases where the claimant himself or herself is the whistleblower. Mr. Nagle did not seek out the media he wasn't he did not try to derogate anybody in the police department or the sheriff's department. The reporter came to the police department and went to the police chief Mr. Chief Ettinger and she said we have this issue here that's come up about about this misuse of County property she met and then Chief Ettinger said well I don't know anything about that why don't you go talk to Sergeant Nagle. So the chief himself directed the reporter to talk. Isn't that worse though? I mean no because the 8th Circuit in our in our and this is the case law that Judge Loken's referring to if it is owes his if it if the statements owed its existence or owed their existence to his unprotected and here you're making an argument that the the chief of police actually asked him to go out and conduct the interview which means it was it was almost certainly within his job duties. If my suit if I had a supervisor and they told me what to do that would owe that statement would owe the would would owe its existence to my job duties. But the chief didn't tell him to do the interview the chief directed the reporter and said why don't you go talk to Mr. Nagle. In fact the chief said I think that might be a FOP fraternal order of police issue. That's what the chief thought he said well I think that's a union issue why don't you go talk to Nagle and the reason he suggested that the reporter talked to Nagle is because the chief didn't think it was a police related matter he thought had something to do with the union. So the reporter came to ask Mr. Nagle if he could talk if he would talk about. Mr. Nagle took comp time took off his badge he wasn't in uniform they went outside the building and she the reporter on her initiative interviewed Mr. Nagle because the chief had directed her to talk to Nagle. The chief didn't direct Nagle to talk to the reporter at all. So you would draw that as had the chief talked to Nagle about doing it would the case be different in your view? That would be a different certainly a different element if the chief gave direction to an employee a subordinate as you said your honor to go talk to somebody then they'd be acting at the direction of their supervisor and it could be then within the realm of the job duties within the ambit of Morgan or even Garcetti but that's not what happened here and the the K the KVLY report identified Mr. Nagle as a police officer but he didn't identify himself as a police officer he didn't come forward as in these other cases that I'm a police officer I want to talk to you about a whistleblowing matter or an issue I'm bringing up. It was the reporter and the choice as to how to describe Mr. Nagle there in a television station said he was a Jamestown police officer which he was but that wasn't what the story was about the story was about this alleged misuse of county property so Mr. Nagle was not in any way as unlike the Morgan case acting with it as a spokesperson for the Police Department or carrying out job duties or in any way relating this to his job at all. The only way the only connection really was as a chief that Mr. Nagle happened to be in the building at the time and the chief thought it was a qualified immunity the Pickering balancing test right so if even if you prove that it's protected I mean there's a lot of evidence in the record that this caused a lot of disruption between the the City Police Office and the the Sheriff's Department which was down the hall they wouldn't even work with Mr. Nagle and it was it was disrupting the operations of both offices potentially so under Pickering balancing doesn't it doesn't this doesn't don't they went under that? No because the sheriff was upset no question about it in fact within moments after that television program was aired at the six o'clock news the sheriff was on the line talking to people about so the sheriff was upset but it had nothing to do with the Jamestown Police Department nobody was upset within the Jamestown Police Department Mr. Nagle continued his work as if nothing happened from the TV report was November 5th 19 2015 and his termination was four months later there was no effort to suspend him or put him on investigative leave or administrative leave he conducted his job just as he had I thought there were members of the Sheriff's Department a that didn't want to work with him and then there was a joint investigative committee set up between the two offices to investigate his conduct yeah there was there was an investigator you're you're saying we just just ignore the Sheriff's Department because that wasn't his employer I didn't say just ignore it I'm saying there was no significant you carefully avoided the upset of the Sheriff's Department just said no one at the Police Department was upset well I did say that they said there was no disruption of the police duties and activities and functions that people in the Sheriff's Department were upset at Nagle because he was on this television newscast that that had these allegations he didn't make the allegation but the hotline report was about misuse of the share of equipment the Sheriff's Department so the sheriff was upset but the Police Department wasn't upset at all Mr. Nagle continued his opera work there there was no effort to suspend him or put him on a leave of effect the the investigator the Police Department didn't ban him from their their part of the building they were upset they said they wouldn't they didn't want Nagle his part of the building but that didn't that didn't affect any of his functions as a police officer doing his work with the Jamestown Police Department his functions that we worry about and in our many law enforcement cases it's a function of the Department of the Law Enforcement Agency well the Law Enforcement Agency here is the Jamestown Police Department that's who his employer was combination well he's employed by the Jamestown Police Department the Pickering balancing test takes into account any disruption and on the part of your employer not some other employer and the test is whether his employee whether it's disruption in the workplace of his employer there was well the evidence in the record those suggests the Sheriff's Department because they were a geographically proximate but a had overlapping jurisdiction that they actually work together a lot and that this disrupted their the ability of the two departments to work there are some conclusory statements made there's no there is not one single fact not one single piece of evidence not one single case not one single incident that reflects any disruption or just a conclusory statement that this was disruptive because they were angry in fact the are the police officer who is tasked with investigating this matter Major Johnson testified that he had a good working relationship with mr. Nagle at all times other officers likewise said they had no problem working with mr. Nagle so there's nothing in the record that suggests that in any way or respect there is a disruption in the police in the functions of the police department which was where mr. Nagle worked there was certainly some people who are upset in the Sheriff's Department they were grousing about and they said they were upset and they made conclusory statements of disruption but any balancing test ought to take into account the actual facts of the case which are devoid of any evidence that there was any impingement impairment or dereliction or derogation of any duties of the police department nothing changed mr. Nagle kept working up to the very end which leads me into the due process argument mr. Nagle was never told what the charges were against him he was never given an opportunity to respond in fact the way he found out he was terminated he opened his mail one day and got a letter from the mayor and the city administrator saying you're fired I thought they told them beforehand at least two different instances that he had that what they were investigating was just discrediting the department which was an ethical code violation am I wrong about that they made general statements about ethics and code violations they didn't say what the code violation was what the ethical violation was that's just a general statement that doesn't suffice under the case law it started his interview he was investigating the tip yes that's what they were investigating but he didn't say that there was any violation but by virtue of the tip in fact under the case law it was false that'd be pretty good inference when would whether to become common knowledge the tip was false shortly after the tip certainly after that television program whether the tip was true or false doesn't really matter though I mean he protected conduct under the First Amendment doesn't depend upon whether it's true or false mr. he made if he made a false tip he didn't know it's false he didn't know it's false okay and the First Amendment protects people from making statements even if they're false if they don't know they're false so the question what we were talking about due process well you asked about the false tip but the duper but that's relevant to to whether he knew about the investigation I mean he was never told what the investigation was about he was never told that and in fact the Police Review Board that ultimately sustained or recommended the termination came up with a number of different reasons that mr. Nagel was never asked about the police review but mr. Nagel was never told what the charges against him were and the case law in this case is the Sutton case the Smutka case the Gronewald case and other case law indicates that someone had that before termination occurs for a public sector employee they have to be given a minimal due process which means that a minimum they have to be given notice of the charges and an opportunity to respond mr. Nagel got none of those last point I'll make is on the question of qualified immunity even if there is qualified immunity as to chief Ettinger that does not apply to the city this of course decision in the mogard versus city of Milbank case holds that qualified immunity does not apply to a defendant municipal government so even if there is qualified immunity it doesn't apply mr. Schmidt may please the court counsel majority of the briefing in this case from the appellant mr. Nagel has been to basically relitigate the merits of this termination that's not what we're here for there's two constitutional issues at play one is the First Amendment the other one is due process I'll start with the First Amendment and I think the questions from the bench during mr. Tanning's presentation we're directly on point first of all this he wasn't speaking as a citizen watch the video he's identified as a Jamestown police officer nobody in the district court hit the nail directly on the head with their analysis on this no reasonable individual is going to watch that video and say this was a someone speaking as a private citizen second part of that is he wasn't speaking on a matter of public concern if you even go and look at his own statement he went out there to clear his Facebook name Dominic Brim you don't think though that if if there was some sort of corruption if the if the sheriff's department was buying jet skis and using it on weekends that wouldn't be a matter of public concern to the populace it absolutely would be a matter of public concern to the populace just as sexual harassment was considered a member of a subject of public concern to the populace but the comments made by the public official in that case which is cited in our brief related to personal animosity between that individual and in the leadership so we're looking at the point of his speech his speech was to admit that yes my name is Dominic Brim on Facebook but alleged I didn't send that that picture into KVLY and then he made a comment about whoever did send it was someone in fear of losing their job neither one of those issues has anything to do with public concern and they also are not someone speaking in the status of a citizen for the First Amendment but it's in the test objective not subjective so that we don't look at maybe I'm wrong about this but we don't look at that necessarily only what he was thinking but whether the allegation if true would be a matter of public concern I think that the the court could consider it that way but when you're talking about whether the allegation was true whether the government was actually using the the jet ski for private someone from the government was using the jet ski for private use I think that Heffernan case actually says that there is a cause of action under 1983 even if it is based on a false belief so the truth truth or falsity of that isn't necessarily just positive of the case but what we are looking at is what was his status when he was making this statement he's identified as a Jamestown police officer in the video that's pretty indicative and the district court again hit the nail right on the head with that what about the actions he took ahead of time so he takes his badge off he takes he makes sure that the police station isn't in the background and I understand there's all these other indicia but he did try I guess to remove some of the the signals that he was a police officer before conducting the interview I would agree with the fact that you he tried to remove some of the signals as he was a Jamestown police officer he very readily admitted that he was speaking as a member of the FOP when we look at what this circuit has done with FOP membership in the Tyndall case they've said that doesn't that doesn't count you don't get protection just because you're speaking as an FOP member and in that particular case the individual wore an inappropriate costume to a Halloween party was sponsored by the FOP so the FOP doesn't provide a shield it certainly does that Tyndall case certainly doesn't abolish qualified immunity in this case it doesn't put the the nature of the speech beyond doubt it doesn't it doesn't clearly define the law on that issue which gets back to the the Pickering test even if we were to say that he was speaking as a citizen he was speaking on a matter of public concern we still get to the Pickering test and when we look at the Tyler versus City of Mountain Home Arkansas case which is cited extensively in our brief this court has previously noted that law enforcement is given substantial deference when they make decisions that are supposed to promote the efficiency of their of their operations in Lyons v. Vought which I believe was probably the case that was was being referenced earlier this court had said that if the employer adduces evidence of disruption qualified immunity applies well we have substantial evidence that was adduced in the record in this case the sheriff said I don't want this guy in my office Chief Edinger gave him an oral order on that Mr. Nagel did file a grievance on that matter and it was resolved informally um the the sheriff said this caused substantial strain on on me it was it was very clearly caused a rift between the two organizations plus there was a joint internal investigation that pretty much everybody in both the Jamestown Police Department and the Studsman County Sheriff's Office were subjected to that took up a lot of time and effort from both of these law enforcement agencies which commonly relied on working with each other to only protect the public but they rely on each other to save their lives that relationship is vital and this court has recognized that police departments and jurisdictions they need each other and when the conduct can damage that relationship the tie goes to the department and that's exactly what we have here so we don't have the district court got it hit the nail right on the head wasn't speaking as a citizen wasn't speaking on a matter of public concern and even if so all of the pickering factors play in favor of the of the city of Jamestown in this case now the other issue that was brought up on appeal is the due process claim essentially what they're asking this court to do is throw Smutka completely out the window and Smutka this court said we look at the pre-termination the post termination process and we don't look at them in a vacuum we see did this person receive due process did they receive adequate due process now there's no question that Tom Nagel was confronted with the prior to him ever being terminated he was asked directly about it during his internal interview with majored with Major Johnson and clearly do you have a case where the pre-termination notice and opportunity to respond that's relied on was conducted by an investigator in a in a a local government situation where the process would ultimately proceed a number of more steps as opposed to our tip of the typical case where the question is does the did the did the supervising this ultimate decision-maker give enough warning of what's to come sure and there there are numerous cases alluded to in our brief I believe one of them's a state court case from from Washington the the name of the case escapes me right now but it does talk about how was an internal investigation where the charges were brought before the individual as far as additional steps go prior to the termination from understanding your question correctly the City Council ultimately makes the decision no they don't and that's one of the other parts of this it's actually fatal to their claim as far as municipal liability goes is the final decision making authority with respect to termination of employment is given to the city administrator the mayor also signed the termination letter in this case but the City Council never made a decision on Tom Nagle's employment the City Council is the policymaker so why doesn't why doesn't the the the pre pre termination process obligation ally with the administrator I don't believe opposed to a an independent investigator operating at the request of two agencies I with no with no with with with it unknown where it would where it would lead I think the smutka case actually speaks directly to that that was an investigation that was conducted not by the ultimate decision maker there was a board that was the decision maker there but there was an investigation that was that was conducted in that case so I think the answer to your question is is yes but when we're looking at the the overall question was Tom Nagel afforded process here we can't just completely disregard the post termination hearing where he's represented by counsel called multiple expert witnesses this was a nine-hour hearing his attorney submitted a 99 page post hearing brief the the indispensable elements of due process were clearly satisfied in this case and there's nothing to the contrary that would one eliminate qualified immunity to chief editor that's that's for sure and we've never even made the allegation that the city's entailed a qualified immunity that's well-established liability to municipalities is governed by Manal and that's policy or custom and it's also that city of Minneapolis case that we cited extensively in our brief where the court gets into the exact analogy that happened here where we have a governing board that sets the policy but decision-making authority with respect to hiring and firing is in that case they use the sheriff as the example here it would be the city administrator and even if the the the decision was ultimately deemed unconstitutional there's still no liability on the city because the city is the final policymaker and they didn't make a decision which is exactly what we have here but this court doesn't even need to get there in this case there was no violation of the First Amendment there was no violation of the 14th Amendment now the other issue that that was briefed Mr. Nagel's requesting the court to impose a state law cause of action and the district court dismissed that portion of their claim without prejudice the North Dakota Supreme Court the last time they addressed that issue specifically was the Christianson v. Strinden case in 1983 where they recognized that there is no private cause of action for damages vindicating rights under the North Dakota Constitution unlike federal law which where Congress enacted section 1983 North Dakota does not have a corresponding statute it doesn't exist Mr. Nagel hasn't pointed to any he's merely asking the federal judiciary to step in and create a state law cause of action when North Dakota legislature and the North Dakota Supreme Court have both declined to do so to date and that same issue was recently decided by the North District Federal District Court North Dakota in the Sander case which is cited in our brief where they basically just disposed of that argument and said we're not taking the extraordinary step as a federal court of imposing a state law right under the Constitution if there's no further questions I will respectfully ask the court to affirm the holding of the district court thank you thank you counsel mr. Tanik used his time I think when case has been thoroughly briefed what you have you have you have something you'd like a minute for I mean I'll give you a minute it's a couple just a couple comments on the due process issue the case law indicates that at a minimum or the advanced notification and opportunity to be heard doesn't have to be substantial at a minimum the employee has to be given some kind of indication of what he's being accused of in the cases that we talked about in our in our brief cited in our brief indicate that there there was a in many cases a list of charges against the individual or some kind of specification of what the charges were not so here furthermore there has to be some opportunity to talk address the supervisor or the decision-maker that didn't happen here mr. Fuchs and the mayor who made the termination decision never had allowed mr. Nagel to know what the charges were I think that's been well briefed and the last point I would make is on the Tindall case on the FOP I'll make this point the city can't have shielded self from liability here is simply because the council didn't make a decision the city administrator and the mayor acted on behalf of the city the termination was made by the city and therefore the claims arise against the city as well thank you thank you cases cases got a lot got a lot of issues and thoroughly briefed and argued and we'll take it under advisement is that complete mornings arguments very good the court will be in recess until